is Michaels v. Agape, Inc., et al., Mr. Pacella. Good to have you, sir. May it please the Court, my name is Mario Pacella, and I represent Ms. Brianna Michaels and Ms. Amy Whitesides, the relators in this False Claims Act case against Agape. There are two issues on appeal. First, whether the district court erred in concluding that the relators could not engage in statistical sampling to prove either liability or damages under the False Claims Act. And then the second is whether the district court erred in concluding that the government has an unqualified veto power over a settlement in a False Claims Act case where the government declined intervention but participated substantially in the litigation. This case is about the Medicare hospice benefit. When you have Medicare, you have medical benefits, but you can elect to have hospice benefits instead of those traditional Medicare benefits if your life expectancy, if you have a terminal illness and your life expectancy through the natural course of the illness would result in death, likely result in death in six months. And that, in this case, centers around that Medicaid hospice benefit. And it also involves, so the case involves allegations of false certifications by doctors with respect to whether a patient is terminally ill and life expectancy of six months or less. The case also involves a claim called general inpatient, which is a higher level of care under hospice than your traditional level of care. And it has a higher reimbursement rate. That typically involves situations where the patient has unmanaged symptoms that the hospice nurses tried to manage in certain ways could not, and then a physician has to certify that this higher level of care is necessary to manage symptoms, usually uncontrolled pain or potentially an infection. The relators in this case brought suit not just under an argument of corporate culture of fraud. In the operative complaint, the second amended complaint. Let's go right to the issues we certified, in particular the 1292B issue on the power of the Attorney General. Okay. I was going to argue that second, but I'll move that to the front line. You can do it however you want to do it, but that's what I would think to be the proper order. But you do it however you want to do it. Okay. Well, the reason why I plan to argue the statistical sampling first, because we never get to it. Well, if you want to argue that, how is that appealable under 1292B? How is the statistical sampling ruling? Yes. I mean, we certified it. The district court certified it, and we agreed to take it. But looking at it, it looks to me like it's an evidentiary ruling that's committed to the discretion of the district judge, and it's fact-driven, and he says that. In his opinion, he says it's fact-driven based on the facts of this case. Actually, that's exactly the reason why it should be remanded, because the district court engaged in – So my point is, and I don't suppose anybody here is taking that position because all you all want to decide it, I guess. If that's the case, that issue we ought to perhaps dismiss as improvidently granted. I mean, how do we – and following up on Judge King's question, I mean, it seems to me that the plaintiff's counsel even said at some point, conceded that we don't know whether the sampling methodology is sufficiently reliable. So even if we agreed with you that sampling could be used under certain circumstances, we would need a fully developed record, wouldn't we, to see exactly what the science was that you were attempting to employ in the case to prove your allegation? Yes, Your Honor. That's actually the very point. The district court subverted a Daubert analysis in a discovery – in the context of a discovery order to make a determination that we couldn't engage in statistical sampling. The district court doesn't tell us whether you're trying to use sampling just to show that claims were submitted that couldn't have been submitted or shouldn't have been, or if you're trying to show falsity as far as scienter knowledge. We don't know any of that. Maybe they would be admissible for one purpose and not for another. So we can't do anything in the blind here, can we, and say that sampling methodology may, under certain circumstances, be admissible? Your Honor, that's actually how courts have traditionally handled this case. This issue of statistical sampling is reserved a ruling until the determination as to the sampling methodology and evaluated under Daubert. So you're agreeing that no decision can be – that we can't do anything with it without a fully developed record? Well, I think it should be – I think the issue is it should be remanded to the district court to allow for the statistical sampling. So you think we ought to abandon that issue? I think, Your Honor, it ought to be the district court's decision that says statistical sampling was improper in this case prior to the sampling and the Daubert analysis. But we don't know. Our standard here is abusive discretion for an evidentiary ruling, is it not? Wait a second. Let me finish the question. Sorry, Your Honor. And given the fact that it is abusive discretion, we can't – we don't know whether Judge Anderson abused his discretion. If your methodology was suspect and unreliable, then he might have been not abusing his discretion, perhaps for the wrong reason, but still the bottom line is the same, no abusive discretion. So how can we even recline in the void like this? Well, Judge Anderson actually says in his decision – and I have to find the page and I'll make sure that on rebuttal I have that page – but he actually says that the issue as the statistic – In his decision, he certifies – he recommends that issue, too. But looking back at when he ruled on the statistical sampling, he said it's fact-driven and it won't work in this case. And he ruled it wasn't going to be used, which looks to me like he's exercised his discretion. And then 1292B is a controlling question of law certified by the district court and agreed to by us that there's a basis for – genuine basis for dispute or whatever it is on a controlling question of law. It's not even a question of law. Except that Judge Anderson specifically said this is a pure question of law in one part of his decision. He may be – but it's not. It's abuse of discretion. It's not a legal question. So if it isn't, we don't have jurisdiction and we can't have jurisdiction over that issue under 1292B. Now, maybe under the other issue, the power of the Attorney General to get involved in a settlement issue in a case where the Attorney General has decided not to intervene is a question of law. Yes, Your Honor. A question of the power of the Attorney General. But I think that the two are different. And it seems to me they are. I mean, I might be convinced before the day's over. Can I ask a question about the process here? You suggested that the district court subverted the process by foregoing a Daubert hearing. But I thought the parties agreed to have them decide this issue in the absence of a Daubert hearing. Well, the court suggested briefing on the issue and asked the plaintiffs to file their motion to allow for statistical sampling. It's a method that, as we cited in the United States Exerell Rock v. General Health Care, it's a Middle District of Florida case. A procedure that that court rejected is essentially saying that it's an advisory, asking for an advisory opinion by the district court as to whether the statistical sampling will survive Daubert prior to doing any statistical sampling and providing the appropriate standard under Daubert to show that it was based upon sufficient facts or data, product of reliable principles or methods, and the expert applied the principles and methods reliably to the facts of the case. That didn't take place here. The court asked in the context of a discovery dispute, because there's certainly a question as to the dispute between the parties as to whether there could be statistical sampling in order to make a determination and extrapolation on the issue of damages. So that's, when I say subvert, I mean certainly we were all there present and arguing the issue to streamline the case, which gets us to the reason why the court wanted to talk about it. You all didn't even ask the judge to certify the case for appeal. He did that on his own. He did that on his own. And then we filed a motion. He was going to have, at one point, he was going to have a bellwether trial. And we're going to do that. And that will happen. It didn't have. That may happen, depending on the result from this proceeding. Right. You all came to a settlement. We came to a settlement, Your Honor. In the absence of the government. We had a mediation and came to a settlement agreement and proposed it, and the court took it under consideration and the government objected. That's where you get into this other issue, is whether the government had the power. The Attorney General of the United States has the power to veto the settlement of a ketone case, false claims act case that is for the benefit of the government. Yes, Your Honor. And under 31 U.S.C. section 3730, it lays out that the court. The statutory provision. Right. The statutory provision that says. It can't be dismissed or settled without the approval of the government or the Attorney General. Which is interesting because the government has argued that you take that provision at its plain meeting, but then backtracks on that and says, well, we've got an Article III problem if we, if that provision is read to prohibit a dismissal in the context of failure to prosecute, for instance, by the relators or a dismissal. You've got a case on your side, arguably, the Ninth Circuit. Correct. And there's two other cases from two other circuits that go the other way. So there is a circuit split. That's right. That's a question of law. If it's a controlling question of law as to the settlement, that would qualify, as to which there's grounds, substantial grounds for difference of opinion, perhaps, because the circuits are split. So maybe there's jurisdiction on that one. And we've certified it and we're here to hear it. But that other one is a different course of a different color. And the context of so we have a statutory provision that the government is arguing you need to take at face value, at its plain meeting, but you really can't take it at its plain meeting because there's a constitutional problem if you take it at its plain meeting. And under the Killingsworth case. I don't see where there's any constitutional problem. The Attorney General represents the United States of America. You're sort of a private Attorney General. And I assume that's who you are. And you've met with the Michaels. And the Attorney General is here representing Mr. Scarborough. And she's the one that controls these things. And the constitutional problem. She can get in them or she can monitor them. She can do whatever she wants to do and she has the power to deal with them. Well, the constitutional. The obligation to deal with them. Thank you, Your Honor. The constitutional. You even put in a settlement agreement that you were going to give these people immunity from criminal prosecution. How are you going to make a settlement agreement to do that without the approval of the Attorney General? There's some context behind that. The Attorney General is not going to ever go along with that. In fact, actually, Your Honor, I think that there is an election by the U.S. Attorney that was noted in the district court. The U.S. Attorney works for the Attorney General. Yes. When I'm talking about a constitutional problem, the constitutional problem really is centered around the involuntary dismissal. The court has to be able to manage its case and make dismissals in appropriate circumstances. But that provision would preclude the court from doing so. No, it wouldn't preclude the court. If you settle, you have to get the approval of the Attorney General. You had this mediation, and the Attorney General wasn't even there. But if you're going to settle, you have to have the approval of the Attorney General. That's what they say, whether she's intervened or not. And we argue that it should be subject to a reasonableness analysis. A reasonableness test, and that the court can supervise the Attorney General. There you trigger some Article III problems, whether the court can tell the Attorney General what to do. Thank you, Your Honor. My time is up. Everybody else here today ran right through that stop sign. Do you have something to add? I will be back on rebuttal, so I'll do that at that time. Mr. Wilkins. My name is Billy Wilkins, Deborah Barbier, and Mark Moore, and I represent Agape. Good to have you, sir. Thank you, sir. History has taught that the exercise of absolute, unreviewable power is not good. The government takes the position that the statute that you just referred to, Your Honor, gives it the power to withhold its consent to a settlement for any reason, even if that reason is totally ridiculous, sinister, or in violation of the Constitution. As ridiculous as I don't like your tie, veto. Or as reprehensible as I don't like your race, your religion, or your politics, veto, and I don't even have to explain why. The government, applying principles of statutory construction, says that the word dismissal in Section 3730 really means voluntary dismissal. Because if that word by statutory construction means we're not inserted into the statute, what would happen is the result reached would be absurd and unreasonable. And we agree with that. At the same time, we point out that the result in this case is absurd and unreasonable. Here the parties to this litigation decided to settle the case if they could. The United States magistrate judge was the mediator. The case was mediated twice, once unsuccessfully, and then the second time successfully, because the parties realized the strength of their positions, the cost of going forward. The Attorney General wasn't involved. Well, the Attorney General was involved in the first mediation. But the mediation, when you got the settlement, the Attorney General wasn't there. And she was not a party to the litigation at that time, but she was interested. By statute, she has to be interested. She represents the United States, and that's the beneficiary of the settlement. It goes to the United States. The relator is the private Attorney General for the United States. I was not involved in the mediation, but my colleagues were. And the first mediation was a disaster because of the intervention of the government in this mediation process. And the media suggested, let's get you guys together without the government, see what we can do. And they did. They settled the case and submitted it to the court. How were they proposing? How did they think they could settle criminal proceeding or future criminal proceeding? Well. I mean, that just jumped off the page at me. Yeah, it jumped off at me, too. But that was taken out. The final settlement didn't have that. But that was in it. Well, that was in it, but that was based upon the Attorney General. The U.S. Attorney was representing that there were not going to be any criminal prosecutions and so forth. So whether it was in there or not is really beside the point now because the final settlement that was before the district court that the government objected to did not contain anything referencing criminal or not criminal prosecution. In any event. So you agree with this Ninth Circuit case? Is that your case? The Ninth Circuit? Of this circuit split? No, I don't even think the Ninth Circuit is right. I mean, the result is right. The result is right, but the reasoning is not really good about legislative history and all that. What we are suggesting, Judge, is to do what courts have done time and time again using principles of statutory construction. This court, in the Butcher decision, Judge Nehemiah writing the opinion for the court, that was a case that was construing a statute, a state statute, to deal with Maryland bankruptcy. They had said that if someone gets a settlement, a structured settlement resulting from physical injuries, that that money, that amount of money is not to be included in the bankruptcy estate. Well, the creditor said, my goodness, is there any limit to this? And the court said, well, if you read the statute, there is no limit. But we're going to infer a standard of reasonableness. To do otherwise, the court said, would result in an absurd result. We're going to adhere, and I quote, to the long-established canons of statutory construction and insert a reasonable standard into this state statute. Courts across the land, time and time again, faced with a statute that says you're entitled to cost and attorneys' fees. Well, that's what it says. But every court has said, yeah, but that's subject to a standard of reasonableness. A federal statute says that the IRS must notify the court of any audit that's done on potential jurors. Plaintiff in the case objected, said they didn't do enough. The court said, well, the IRS is subjected to do a reasonable effort to make this audit known to the court. And another federal statute says that custom agents have the unlimited, unbridled authority to board aircraft and search them. The court said, yeah, that's what it says. But it's subjected to a standard of reasonableness. And that's what we're asking this court to do. The attorney general has the right to object, the right to object vehemently, but cannot do so not being some review on the basis of reasons by the district court. Well, that seems to put the attorney general, and by implication, the United States, who ultimately is the beneficiary of any settlement in a worse position than a private litigant would be, who could veto a settlement for any reason. Well, you mean the private litigant can refuse to settle? Yeah, so why can't the United States do the same thing? The statute seems to suggest that. They can if they intervene. If they intervene, they can vote. That's what the Ninth Circuit said, that they had to intervene to get to be involved in it. That's what I thought. Well, I think. And Judge Anderson actually ruled against your position. He did. But he then talked about this reasonableness point. He did. He said that a strong case could be made that the government's position in this case, he said, was not reasonable. He reviewed those three cases that I mentioned, the Ninth Circuit, the Fifth Circuit, and the Sixth Circuit. I'm sorry, I interrupted Judge Dionne. That's okay. Well, what I'm suggesting, just plain old statutory construction canons apply here, and this court should read into this a statute of reasonableness. Oh, no. And the Congress could have written reasonableness in that 3730. They could have, and they could have in many statutes that the court has inferred a standard of reasonableness in federal and state statutes across the board. But the Attorney General has a lot of power that's basically unreviewable. The Attorney General of the United States has powers that are unreviewable. Prosecutors have power that are unreviewable. That may be an instance of fraud if you can prove they're bought off or something. But as a general proposition, the prosecutors, and you've been one and I've been one, they make decisions. Yes, and I decide. And they're unreviewable. We go on. Not so. If I seek an indictment as a prosecutor, that's going to be reviewed by a judge and a jury somewhere down the line. Now, Grant. If you don't. If I don't, that's not reviewable. That's not the same as making affirmative action here. If you don't, it's not reviewable. But this is affirmative action taken by the court, I mean by the Attorney General. No, we're vetoing it. And I'm just suggesting that that ought to be reviewable in a standard of reasonableness. And that part, controlling question of law, as to which there's a substantial ground for difference of opinion. Judge Anderson said that 1292B provision applied here and it was entitled to an early review. And we accepted that. We have certified this appeal under 1292B, which we don't do very often. That's right. But that other issue, on that evidence issue, is a different thing, I think. Do you have a position on that? Yes, sir. Yes, sir. If I might just want to say one thing. The government says. You can use your time however you want to, but I was just going to see if you were. I didn't figure anybody was going to argue against jurisdiction here on anything. Well, on the statistical. But I don't have to do it if anybody's going to do it. On statistical sampling. Here's what happened. The relators made a motion to the court. We would like to statistically sample and extrapolate that and try the case that way. There's their motion before the court. They had every right to submit expert affidavits, someone to describe the methodology that was going to be used, or anything else they wanted to submit to support their motion. They submitted nothing. Zero. And Judge Anderson's there. He's got a motion. Can you statistically sample in this case? And I say you cannot for many, many good reasons. But he said based on the record, based on the submissions they've made, I deny the motion. Now, that's before the court. They're not seeking a remand to go back and have a hearing on this. They said we want to statistically sample. They did not support their motion. It was denied. It should not. And, of course, that's not an abuse of discretion on Judge Anderson's part. And this court should affirm on that issue. And it's before this court. Well, it's only before this court on a certified appeal if we agree that it's a controlling question of law as to which there's a substantial ground for misrepresentation. And based on the record, based on the record before the district court, they had a right to make. The question is, before this court, did Judge Anderson abuse his discretion? Period. Yes or no? And that's not a question of law. Well, it is. I don't think. But, anyway, it's fact-driven. But if we disagree with you on the first issue and say the attorney general has a veto power, then it does go back to the district court necessarily. Yeah, it goes back. Right. And then wouldn't the issue of statistical sampling then be subject to perhaps another showing on their part, have a dauber hearing on the reliability of their information, and the court would be asked to rule again?  Because if the case does go back for further proceedings, won't there be an opportunity for the district court to consider what they have? If they have a reliable method. It may not. It may just be, you know, hoping that something materializes. But if they do, wouldn't this present the district court another opportunity to consider the issue? If the case goes back and the motion is made, again, renewed motion for statistical sampling, and they produce expert witness, a methodology, outlines, all that stuff, it may be, Judge. It may be. I don't think that will happen because they had a chance to do it before and didn't do it. But what is before this court is, is statistical sampling proper in this case under this record? But it's up here as a separate, stand-alone issue under 1292B. Now, under 1292B, if we certify that first issue and there's something that's related to it, we have some cases that talk about something that's inextricably intertwined. Maybe we can take that up along with it. But nobody's argued that kind of a doctrine here. It's come up here as a separate, certified issue of law. Whether the judge was right on the statistical sampling. Well, he could be right or wrong, and he could change it before the trial started. It's all fact-driven. It's an abuse of discretion. Whether he's going to let evidence in or not, what kind of evidence he's going to let in. We don't know that at this point. Well, the question is, did he abuse his discretion based on the record before Judge Adams at the time? And that's the question. That's a non-final order that we normally, I don't think, would review under 1292B. But maybe we will. You've got your rebuttal time, too, Mr. Wilkins. Mr. Scarborough. May it please the Court. Thank you, Your Honor. Charles Scarborough for the Attorney General. The district court in this case correctly held that the United States has an absolute right to withhold consent to a settlement of False Claims Act claims and upheld the government's veto of the settlement proposed by Agape and the relators in this case. We think that if this Court agrees with that legal proposition, it need not reach any other issues raised in this interlocutory appeal, because the Court had no authority to second-guess the government's reasons, the reasons the government gave for rejecting the settlement. So we basically agree with the skepticism that the Court has been expressing about whether the second question is properly before the Court, not only for the reasons that it's an evidentiary, typically an evidentiary question, ill-suited for sort of an interlocutory appeal under 1292B, but also because you just don't reach the question because if it's unreviewable veto authority, the only way in which it's unreviewable. Well, if we rule with you on the veto authority, the second issue is moot. Well, you don't. Is that what you're saying? Yeah, it's not really before the Court because the only way the district court was thinking about statistical sampling was in suggesting that the government's veto of the settlement here was likely unreasonable because it relied on statistical sampling. That was part of what he thought about the government, but the statistical sampling was also whether the plaintiffs could prove the case by using statistical sampling. I understand, Your Honor, but that clearly is just an evidentiary ruling. It's an evidentiary ruling and it's not reviewable here. We tend to agree, Your Honor. You can take whatever position you want. We tend to agree. We're the only ones who actually oppose the 1292B appeal in this case. The parties both came up here after the district court certified its order and the government came in as an intervener or whatever you want to call us as the proponent of the absolute veto authority and said you shouldn't take it. You say that the issue of the Attorney General's power is not certifiable. Well, we didn't think that. It's a discretionary determination whether to take the 1292B appeal. But on the 1292B, what's the position of the government on whether we have jurisdiction to decide the power of the Attorney General to reject the settlement? You certainly have jurisdiction to decide that. I was pointing out that we opposed the 1292B petition as a matter of discretion. That's the sole point I'm trying to make. The other point that I want to make at the threshold before examining the statute itself, which has received surprisingly little attention in this case about statutory construction, is that this is the government's claim that is being settled. You're talking about 3730. Yes, I'm talking about 3730. But I'm making a threshold point that really is sort of getting lost in the discussion here. It's the government's claim. So it's not surprising that Congress gave lots of authority to control the claim, gave the government the ability to intervene upon a shilling of good cause, gave the government an unfettered right to dismiss the claim over the relator's objection, which is subject to some review, fair, adequate, and reasonable review, gave the right to the government to settle the claim over the relator's objection, and not surprisingly gave the government a right to veto the settlement proposed by a relator and a defendant in part because there are significant divergent interests that may occur in a QITAM case. The relator is in one case and has every incentive to bargain away sort of maximum, you know, claims that the government might bring in order to, you know, maximize its settlement. So I want to turn to the language of 3730B1, which nobody has talked about thus far, and it says that a, quote, action may be dismissed only if the court and the attorney general give written consent to the dismissal and their reasons for consenting. As the Fifth Circuit said in the Searcy case in approving the unreviewable veto power, that language is about as unambiguous as one can expect. And the key sort of statutory construction point that we rely on is that this is not just a provision in isolation. This is a provision that occurs, you know, along with a whole bunch of other provisions that talk about the government's control and, you know, the rights of relators versus the rights of the government in a declined QITAM case. And the particular provision I want to point the court to is Section 3730C2B, which allows the relator to object to but not veto the government's settlement of a case, in which case the court, the statute expressly prescribes a standard of review. It says the court is to review that objection by the relator to determine if it is fair, adequate, and reasonable. That contrasts markedly with the absence of any sort of standard of review to look at the government's veto authority. And, again, none of that is surprising. When you think about this, this is the government refusing to consent to the dismissal of its claims. And the nature of the action I would want to emphasize really is, as Judge King, I think you made this point a couple of times, it's in the nature of prosecutorial discretion. It's withholding consent. The statute requires the government to give written consent to a settlement if it wants to. A court can't, under some sort of made-up reasonable standard, compel the Attorney General to give written consent to the settlement of its claims. And sort of the notion that, you know, this should be written, read into the statute, because in other contexts courts have, you know, implied sort of a reasonable standard, that really does ignore the particular structure of the False Claims Act, the particular language of the False Claims Act, and the decisions, the more recent and better reasoned decisions by both the Fifth and Sixth Circuits on this very issue. Do you place any emphasis in your argument over the fact the statute requires the government to give reasons for consenting, but does not require the government to give reasons for not consenting? Yes, Your Honor. How does that play into your analysis? Well, it just shows that Congress was drawing a distinction. And to the extent that we're looking at the plain language there, I think that what it shows is the baseline assumption is that the claim is going to go forward once brought. A claim to redress fraud against the government is going to go forward absent, you know, some reason to halt it, some reason to come forward and say, look, we've got a fair and adequate thing. And so, you know, when the government brings that to a halt, it has to give the reasons for consenting. But again, the absence of something that says the government has to give any reasons for not consenting is a very important, you know, a pregnant negative, if you will. So what are you saying? That suggests that reasonableness is not a requirement? Yes, because the government doesn't have to give any reasons for withholding consent, in contrast to it has to give reasons when it does consent to the settlement. That's what I was trying to get at, Judge Keenan, is that the baseline is that a false claims case is going to proceed absent some, you know, proper termination that the government, the Attorney General, believes is satisfactory. And I think this case really illustrates the problem of reading a reasonableness standard into the statute. You know, you heard from Mr. Wilkins and the defendants, you know, reasonable standards, they're read in all the time. We submit they're not ever read in in the context like this, where you're talking about prosecutorial discretion, you're talking about governmental inaction, and you have a statute that really doesn't, that has, you know, but they also make sort of the policy argument that what's so big, what's the big deal about reasonableness review? Like, it's not going to be that onerous or anything like that. And, you know, at some level that is appealing, but I think this case illustrates how reasonableness review actually is quite intrusive. I mean, what they want the court to do under reasonableness review is go in and second guess the way the government estimated the settlement value of the case, and whether it used sampling, and whether it used sampling properly, and whether, you know, it was reasonable to object to the breadth of the releases here. Judge King, you alluded to the breadth of the release. The release of criminal administrative claims is extraordinary here. It shows why the government really does need to be in here monitoring this, why Congress gave the government the power to monitor these settlements and to veto them. And that was not the only reason, of course. You know, the amount of the settlement in comparison to the breadth of the release and various other aspects of the settlement were problematic. There's an argument or somebody, I guess plaintiffs there, talk a lot about what it was going to cost to litigate if they went forward. That had to be taken into account. And about these expert witnesses that were going to cost $20 million or something just in upfront expenses to review all these medical records. How do you handle that? Well, I think, again, I think that illustrates the point that I was trying to make is that, you know, the fact that the case as the relators have framed it would be expensive to try is not something that should make the government have to consent to a, you know, breathtaking release of claims here over an eight-year period, all claims that the government conservatively valued, you know, at worth $25 million. You're essentially just saying that's not the government's problem, that they have decided to sweep so broadly. That's correct. And, again, the case, I think, when you were speaking to Relators Council, you alluded to the fact that the case, you know, as when the district court had ruled out the use of statistical sampling, the case was proceeding towards a trial on a sort of more limited universe of claims. A bellwether. A bellwether theory. That's right. And so the relator, you know, a relator does exercise substantial control on the types of claims that they can bring on behalf of the government. The government can come in and exercise control. But in a lot of cases, you know, the relator goes forward and limits the claims or broadens the claims or adds the claims or amends the complaint and goes forward with the litigation. You know, if the relator wants to go forward with a bellwether trial, you know, the government may or may not have a problem with that, but it remains to be seen. So, yes, it's no answer to say it would be really expensive to try the case. It is important. I don't want to minimize the expense of trying these cases because in some of these cases, the fraud is gigantic. It is a serious problem. It's part of the reason why the government cares very much about the statistical sampling issue. You don't have a division up there or a section in the criminal division that focuses on these things? Well, I come from the civil division and there's a fraud section. But there used to be a fraud section in the criminal division. Yes, I believe there is. You probably got one that does health care fraud. Yes, health care fraud is rampant. And, again, sort of the notion that you can't use some form of inferential statistics to, you know, extrapolate from a small pool to determine sort of the breadth of the fraud, you know, committed on these massive bases is an extremely important issue for the government. We agree, however, that it is not an issue that is properly teed up in this case because all you have before you right now is the district court rejecting statistical sampling on two sort of, you know, not really case-specific reasons but basically just said, I don't think this is, you know, a case that has evidentiary gaps. I think that's the only place statistical sampling can be used. And I don't think, generally speaking, it can be used for medical necessity claims. We think both those, you know, reasons for rejecting statistical sampling were wrong. But we do think that sort of, you know, he said that in the context of saying the government's use of statistical sampling to not approve the settlement, to evaluate the settlement value of the case was no good. And if you agree with us that the government has an absolute veto authority, you don't get to the statistical sampling question, just as sort of a matter of logic. I think, based on the court's questions, I would like to be sort of the first guy to sit down before my red light goes off, but I'm happy to answer any questions and talk about any issue. I appreciate the extra credit, Your Honor. Mr. Pasella? Maybe he'll cede you some time. May I please, the court? Earlier in my argument, I had mentioned that the court had stated in its order that statistical sampling issue was a pure question of law. In fact, on page 480 of the joint appendix, the court says at the top of the page, because the question presented was a pure question of law, not dependent upon subsequent discovery, the court proceeded to receive, briefing, and heard argument on the use of statistical sampling. So on a 1292, sorry, but on an interlocutory appeal analysis, the court's wrong that it's a factual question, which I actually think it is, should be addressed under Daubert following discovery and statistical sampling prior to trial, then that part of this order is reviewable and reversible. About three months before that, at the order on the statistical sampling, before he certified it, it said, after consideration and research on statistical sampling, the court believes that based on the facts of this case, statistical sampling would be improper. And as the government had pointed out, the facts of the case that the judge was talking about is the issue of medical necessity and the fact that the evidence had not dissipated. I think those are the facts the court was hitting home. In fact, the court had drawn a relationship to another case that it allowed for statistical sampling because the evidence had dissipated. So I submit to the court that it is proper review for interlocutory appeal because it is a pure question of law, or at least the court considered it to be a pure question of law, and asked that the court reverse on that ground. With respect to the reasonableness standard, Judge Wilkins is correct in that the government has a backstop, and that is to intervene in the case. And the government can intervene in the case and dismiss the case, albeit the relators would have the right to object to it. So the government still has that backstop. Thank you, Your Honor. Thank you very much. We appreciate it. Mr. Wilkins? The reason the court rejected the motion to statistical sample because it realized full well that what we are talking about here are hundreds of doctors making clinical decisions about highly individualized, uncertain, subjective medical diagnosis, including predictions of how long some person may live. Now, the government says we have to have this absolute veto power because otherwise sweetheart deals will be cut by the relators and the defendant. Well, there's no reason to think that if a sweetheart deal were presented to Judge Anderson or any district judge, that the district judge, looking at the reasons why the government is objecting to it, uphold that objection and require that and not approve the sweetheart deal. And if you did... Excuse me. No, no. I'm asking the same question I asked the government. Since the statute does not require the government to give reasons for not consenting, but it does place on the government the requirement to say why it does consent to dismissal, doesn't that suggest that there isn't a reasonableness requirement in the government's decision not to consent? Well, it's the flip side of the same coin. If you have to give a reason to consent, you don't have to give a reason. They don't have to give a reason under the statute, as it's literally read. Right. Doesn't that suggest that the government can just consent if it wants to without having to be reasonable? The fact that it is required when the government is agreeing to dismissal, but it is not required when the government opposes dismissal? Well, I understand what John is saying. But any action by a government, any affirmative action like veto, should be subject to a standard of reasonableness, just like other actions by the government are subjected to some type of review. This question came up with an indictment. Well, of course, that's going to be subject to review by a court somewhere along the line, and it can be dismissed if for some improper reason the indictment came down. Let me just say one thing about the government did submit statistical analysis, its statistical analysis to the court in camera. On JA 707, the government's attorney says, Your Honor, we're giving you in camera our computation on an error rate. I'm talking statistical sampling extrapolation. This is just an error rate that was extrapolated. Well, that's where the problem really comes in with the government, because the False Claim Act is not talking about error rates. Even Judge Anderson came out, and he said, I've read what the government submitted. It looks like it's between a 20% and 60% error rate. Not error rate. False Claim Act deals only with material, knowing, false statements, not some type of error, mistake, honest mistake, even a negligent mistake. And that's what the government based its veto on, and that's, as Judge Anderson said, a good case can be made. It's totally unreasonable. Thank you, Your Honor. Thank you very much, sir. And we'll adjourn court.
judges: Robert B. King, Barbara Milano Keenan, Albert Diaz